## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| MARCUS ESTES<br><br>       Plaintiff,<br><br>v.<br><br>METRC, INC. and METRC ID, LLC,<br><br>       Defendants. | Case No.:  8:25-cv-02067-WFJ-CPT |

### DEFENDANTS' MOTION TO CONSOLIDATE AND FOR STAY

Defendants Metrc, Inc. and Metrc ID, LLC ("Defendants" or "Metrc"), hereby move to consolidate the instant action, Case No. 8:25-cv-02067-WFJ-CPT (the "Instant Action") with the previously filed case pending before your honor in this district captioned *Metrc, Inc. and Metrc ID, LLC v. Marcus Estes*, Case No. 8:24-cv-01252-WFJ-CPT (the "Original Action").  Defendants move for consolidation pursuant Rule 42, Federal Rules of Civil Procedure.  Defendants also seek a stay of their time to answer or otherwise respond to Plaintiff Marcus Estes' ("Estes") Complaint in the Instant Action until the Court rules on this Motion to Consolidate.  In support thereof, Defendants state as follows:

### INTRODUCTION

On August 4, 2025, the United States District Court for the District of Oregon transferred Estes' Complaint in the Instant Action to this Court.  D.E. 25.  In his

1

Complaint, Estes sets forth two causes of action under Oregon law, one for unlawful whistleblower retaliation, and the other for common law unlawful discharge. D.E. 1 (the "Complaint").  Estes' claims in the Complaint should look familiar because Estes attempted to bring these same causes of action as counterclaims against Metrc just two months ago in the Original Action.   Indeed, in the Original Action, Estes waited approximately ten months[1] after the Court's deadline to amend the pleadings to add his claims for whistleblower retaliation and unlawful discharge (the "Counterclaims"). The Court in the Original Action denied Estes' motion to amend because Estes failed to show good cause for his undue delay in seeking to amend.

These same claims are now before the Court in the Instant Action.  Due to the substantial overlap between the claims in the Instant Action and the Counterclaims Estes sought to bring in the Original Action, as well as Estes' heavy reliance on his whistleblower and unlawful discharge allegations as defenses in the Original Action, and in the interest of avoiding duplicative trials, Metrc seeks to consolidate the Instant Action with the Original Action, as further set forth herein.

---

[1] The Court's Case Management and Scheduling Order dated November 6, 2024, set the deadline to amend pleading for September 3, 2024. Original Action, D.E. 25

2

## FACTUAL BACKGROUND

1.      On May 23, 2024, Metrc filed a complaint against Estes in the Original Action alleging three separate counts: (1) breach of Estes' Offer Letter Agreement based on his failure to repay a $100,000 Signing Bonus; (2) breach of the Non-Solicitation Agreement based on Estes' inducement or attempted inducement of Metrc's customers to cease doing business with Metrc; and (3) tortious interference with Metrc's business relationships. Original Action, D.E. 1.

2.      In early August, Estes informed Metrc's counsel that he intended to file undisclosed counterclaims against Metrc in the Original Action. *See* **Exhibit A** – *Email from Andrew DeWeese dated August 4, 2024.* In his correspondence, Estes' counsel stated his concern that he might be required to file these counterclaims with his answer, given that they were compulsory under Rule 13, Federal Rules of Civil Procedure. *Id.* Estes used the purported counterclaims as a tactic ahead of mediation in order to push resolution.  Estes' counsel proposed that he provide the substance of those purported Counterclaims in advance, and further requested that: (1) Metrc agree that his not asserting the Counterclaims in his answer would not prejudice him from filing it after the mediation (assuming it was unsuccessful); and (2) that Metrc not oppose Estes' request for approval from the Court regarding this arrangement. *Id.*

3.      Four days later, on August 8, 2024, Metrc responded.  Specifically, Metrc attached their proposed Joint Case Management Report, setting a proposed deadline of September 3, 2024, to move to join a party or amend pleadings, a March 10, 2025, deadline for Estes to serve his expert disclosures and associated report under Rule

26(a)(2)(B), and a discovery deadline of April 14, 2025.  See **Exhibit B,** *Plaintiffs' August 8, 2024, correspondence with A. DeWeese.*

4.   Initially, Metrc told Estes' counsel to simply proceed with the filing of the counterclaims. *Id.* Minutes later on August 8, 2024, Estes forwarded the substance of the proposed counterclaims. **Exhibit C**, *Defendant's Email to Metrc's Counsel at 2:58 p.m. on August 8, 2024.*  In these counterclaims, Estes set forth two causes of action: (1) whistleblower retaliation under Oregon law, and (2) unlawful discharge under Oregon law (the "Counterclaims"). Estes concocted a story that Metrc's systems—which Estes was not intimately familiar with, as admitted during deposition—allowed diversion of product into the black market.  **Exhibit D**, *Proposed Counterclaims forwarded on August 8.*  Estes further alleged that he reported his concerns about Metrc's systems to Metrc sometime in June 2023, but was terminated for it ten months later in April 2024. *Id.*

5.   These same Counterclaims are now before this court in the Instant Action, Case No. 8:25-cv-02067-WFJ-CPT.

6.   Returning to the Original Action, on August 14, 2024, Metrc's counsel represented that, while the allegations in the Counterclaims were inaccurate and false, filing the Counterclaims in the public record prior to mediation would complicate settlement as Metrc would then be in the position of having to disprove said allegations and clear its name.  **Exhibit E**, *August 14, 2024, Email from E. Carlstedt to A. DeWeese.*

7.   Accordingly, the parties agreed that Estes would refrain from filing the Counterclaims in the Original Action until mediation occurred.  If the matter did not

resolve at mediation, Metrc would stipulate to allow Estes to amend his answer and assert the Counterclaims. But Estes' counsel was supposed to seek approval from the Court for this arrangement, as proposed in his August 4 email. Estes' counsel, however, never did.

8.      In the interim, Metrc served discovery, some of which was aimed at the substance of the Counterclaims. *See* **Exhibit F**, *Estes' Resps. To Metrc's First Set of Interrogatories to Estes*. For example, Metrc asked that Estes identify "every law, rule, and/or regulation you contend Metrc violated" in support of his whistleblower claim. But Estes objected to providing any substantive responses to the extent they touched upon the Counterclaims. *See id.* Specifically, Estes stated that "the operative pleadings in the matter do not currently encompass the subject matter of this interrogatory." But in these responses, Estes represented that his Counterclaims were, indeed, forthcoming. *Id.* ([Defendant has] "not yet gathered all of the facts and information that will be used to support his defenses **and proposed counterclaim**…" *Id.* (emphasis added)); *see also* Response to Interrogatory No. 10 (discussing forthcoming counterclaim).

9.      The parties attended the court-ordered mediation in the Original Action on November 6, 2024, but were unable to reach a resolution.

10.     At no point in time after mediation did Estes' counsel contact Metrc's counsel regarding the stipulation to allow Estes to amend his answer and file his

Counterclaims in the Original Action.  Metrc assumed that Estes had simply decided to forego his Counterclaims.

11.    Then, approximately 5 months later, on April 4, 2025, unbeknownst and without notice to Metrc's counsel, Estes filed his Counterclaims in Oregon District Court (the "Oregon Action"). *See* D.E. 1. It was evident that Estes was forum shopping his Counterclaims, and that he felt he would get a more favorable court or jury if he pursued his claims in Oregon.

12.    On April 8, 2025, Metrc's counsel deposed Estes in the Original Action. During his deposition testimony, Estes made clear that his defenses in the Original Action related to his whistleblower and unlawful discharge claims in the Oregon Action.  For example, Estes testified as follows:

Q: Are you saying that you didn't turn over access to those domains because of legal action that was threatened against you?

A.    No, that's not what I'm saying.

Q:    Okay. Well, what legal action was threatened against you as of let's call it April 8, 2024?

A.    I think only implicitly it was suggested that if I did not sign those [severance] agreements, for instance, that I would be sued for recovery of my signing bonus.

Q.    Isn't that something that you had agreed to pursuant to the offer letter agreement?

A.    **My belief is that because Metrc was involved in illicit activity that I was wrongfully terminated and, thus, not compelled to repay that bonus.**

Estes at 232:3-23. Furthermore, this was commensurate with Estes' interrogatory answers in which he stated that he "did not return the $100,000 signing bonus to Metrc because Metrc wrongfully terminated Defendant..." **Exhibit F**, Response to Interrogatory No. 3 (compare with Count II of Estes' Complaint in the Instant Action for "unlawful discharge").

13.    In addition, Estes' statements to Metrc's customers and prospective customers, which form the subject matter of Metrc's breach of the Non-Solicitation Agreement and tortious interference claims, intertwine with the underlying whistleblower claims.  In a text message to prospective client Stephanie Arakel of Khalifa Kush (just days before her scheduled meeting with Metrc relating to the adoption of Retail ID), Estes stated that Metrc was "corrupt", that Metrc was trying to "muzzle" him, that Arakel's company shouldn't "touch" Retail ID, and that he would be pursuing a campaign against Metrc in the press. *Id. See* **Exhibit G**, *Defendant's Text Messages with Stephanie Arakel.*  Estes interfering statements regarding purported "corruption" reference the same allegations he has proffered in support of his whistleblower claims in the Oregon Action (and now, the Instant Action).

14.    Estes made a similar statement to Metrc's customer Wyld on April 22, 2025.  Specifically, Estes informed Wyld's Director of New Market Operations, Eric Mushrush, that Metrc had fired him without cause, and that they had tried to get him to sign a "document saying I wouldn't tell you or anyone else what I saw working there.  I declined that and will be speaking out across the whole industry, with support from my attorneys." **Exhibit H**, *Estes' Text Messages with Eric Mushrush*.  Thus, Estes

informed Mushrush that he would be taking his whistleblower allegations, with the support of his attorneys, into the public sphere. Estes further instructed Mushrush to refrain from continuing to do business with Metrc, stating, "I don't think you guys should be one of the few MSOs to back them on this QR code. I'll have to tell you more in person sometime." *Id.* The substance of Estes' messages and subsequent conversations with Mushrush implicate both Metrc's interference claims in the Original Action *and* the Instant Action's whistleblower allegations. In other words, the evidence of Estes' conversations with Mushrush would need to be introduced in a trial on both claims.

15.     Similarly, Estes was contacted by a due diligence researcher, Lindsay Moran, that had been contracted by a government client "looking at hiring Metrc." **Exhibit I**, *Defendant's LinkedIn Messages with Lindsay Moran*. Moran holds herself out to be a former CIA operative "with a broad professional spectrum that includes investigation, covert operations, training, events, and communications." **Exhibit J** *Lindsay Moran Linked In Profile.* Moran further states in her LinkedIn profile that she "brings the skills of spycraft to help individuals and organizes optimize their potential and find out what they need to know." Here, Moran contacted Estes to "verify how well their system controls for inversion/diversion" of product—similar to Estes' allegations that form the basis of Estes' whistleblower claims. **Exhibit I**. In response, Estes told Moran to email him at his personal email account, but Estes did not produce any subsequent communications with Moran.

16.    From these communications, it was clear that Estes was in a position to dissuade prospective clients from hiring Metrc, and that, given the inquiry regarding inversion/diversion, these conversations were intertwined with Estes' alleged, underlying whistleblower allegations regarding Metrc's systems ability to control for product inversion/diversion.

17.    During his deposition, Estes testified that he had no further communications with Moran. Estes at 266:8-267:8. Estes testified that he was instead contacted by Moran's colleague, investigative journalist/consultant Gretchen Peters. *Id.* at 266:18-269:4. Estes' counsel then objected on the record regarding the substance of Estes' communications with Peters, stating that she had been "hired by my firm as a consultant and we have had numerous communications with Ms. Peters since that time." Estes at 267:15-269: 4. It is unclear in what capacity Peters was hired by defense counsel, whether she was acting as an agent for a client or prospective client of Metrc, or whether Peters made any subsequent statements to Metrc's clients or prospective clients regarding purported product inversion/diversion that may amount to tortious interference or further breach of Estes' Non-Solicitation Agreement.

18.    Twenty days *after* the deposition, Estes produced communications with Peters, but only a limited email exchange not subject to privilege. **Exhibit K**, *Communications with Ms. Peters*.  During Estes' deposition, defense counsel made clear that further communications exist, and even produced a consultancy agreement allegedly executed between Estes' counsel and Ms. Peters. **Exhibit L**, *Consultancy Agreement*.

9

19.     Regardless, it is clear that Estes' communications with Peters touch upon both: (1) Estes' claim for whistleblower retaliation, and (2) Metrc's claims for tortious interference/breach of the Non-Solicitation Agreement with its clients or prospective clients.  This same evidence, including the testimony of Peters, would need to be presented both in support of Metrc's breach of the Non-Solicitation Agreement and tortious interference claims in the Original Action, and in defense of Estes' whistleblower allegations in the Instant Action.

20.     That's not all.  Estes' communications with his colleagues in the days after being informed of his impending termination also implicate both Metrc's interference claims and Estes' whistleblower claims.  For example, in an April 11, 2024, text message with Metrc's Product Owner, Matt Goetz, Estes informed Goetz he had just spoken with another customer of Metrc's, John Brown of Holistic (one of Metrc's customers specifically named in the Complaint) and reported, "I don't think you guys are going to have any customers left when I'm done sharing my side of the story." **Exhibit M**, *Defendant's Communications with M. Goetz*. Estes continues, "they're not just dumb. They're corrupt." Accordingly, the substance of this conversation and Estes' prior conversations with Goetz touch upon both his belief that Metrc was engaged in unlawful conduct *and* his own interference with Metrc's customers. Goetz's testimony and documentary evidence will need to be introduced both in support of Metrc's claims in the Original Action and in defense of Estes' whistleblower allegations in the Instant Action.  Furthermore, the substance of Estes' conversations with Mr. Brown will also be relevant to both actions.

21.     On April 29, 2025, Metrc's Oregon counsel filed a Motion to Dismiss the Oregon Action under the "first to file" rule given that the claims asserted in the Oregon Action were substantially similarly to the claims before this Court. D.E. 8, *Metrc's Motion to Dismiss*. Estes opposed, arguing that the issues involved "are completely dissimilar and involve none of the same facts." D.E. 15 at 3, *Estes' Response to Motion to Dismiss.*

22.     Given the procedural posture of the case, the Honorable Karin Immergut was not privy to all the overlapping evidence between the Original Action and Oregon Action.  Still, Judge Immergut granted Metrc's motion and ordered the dismissal of the Oregon Action on June 9, 2025. In her Opinion and Order Granting the Motion to Dismiss, Judge Immergut, applying the "first to file" rule, stated in relevant part that:

> As to the similarity of the issues, "[t]he issues in both cases also need not be identical, only substantially similar," meaning that there is a "substantial overlap" between the two lawsuits. *Kohn L. Grp.,* 787 F.3d at 1240. There is substantial overlap between the issues in these cases. Both this action and *Estes I* arise from Plaintiff's employment with Defendants **and the parties' executed Offer Letter Agreement**, *Estes I,* No. 8:24-cv-01252-WFJ-CPT, ECF 1-1.

*See* D.E. 20, *Order Dismissing Oregon Action*. The Judge continued by stating that one issue in the Original (Florida) Action is "the nature of [Estes'] termination and whether his termination triggered his requirement to repay the signing bonus."  Similarly, in the Oregon Action "the factfinder will have to assess the nature of [Estes'] termination in resolving the wrongful discharge claim."  *Id.*

23.    On June 13, 2025, Estes moved for reconsideration of the Oregon Court's Order dismissing his Oregon whistleblower and unlawful discharge claims.  D.E. 21. Specifically, Estes requested that instead of dismissal, the Oregon Court should "stay the matter for a reasonable time in order to allow Estes to seek leave to bring [his Counterclaims] in the Florida Matter…"  D.E. 21 at 7.

24.    The same day that Estes moved for reconsideration of the Oregon Court's Order dismissing the claims (June 13), Estes moved for leave in the Original Action to amend his answer and assert the Counterclaims. *See Estes' Motion for Leave to File Counterclaim and Extension of Case Management Deadlines,* D.E. 45 at Case No. 8:24-CV-01252 ("Motion to Amend").  Metrc Opposed Estes' Motion to Amend in the Original Action. *Id.* at D.E. 52.

25.    On July 14, 2025, this Court in the Original Action entered a text Order denying Estes' Motion for Leave to Amend to add his Counterclaims, stating that Estes failed to show good cause for the untimely amendment. *Id.* at D.E. 53.

26.    On August 4, 2025, the Oregon court granted Estes' Motion for Reconsideration.  D.E. 25.  In doing so, the Oregon Court again opined that Estes' "case substantially overlaps with the earlier filed action by [Metrc] against [Estes] in the Middle District of Florida," but determined that the Middle District of Florida could better determine "whether this action is properly brought and, if so, whether the two actions should be consolidated."  D.E. 25 at 3.  Estes never informed the Oregon Court that the Middle District of Florida had already denied his Motion to Amend to

add the Counterclaims.  Accordingly, on August 4, 2025, the Oregon court transferred the Oregon Action to the Middle District of Florida.  D.E. 25.

27.    Pursuant to the Oregon Court's transfer, the Counterclaims are (again) before your honor in the Instant Action.

28.    On July 21, 2025, Metrc moved for partial summary judgment in the Original Action with respect to: (1) Estes' breach of his offer letter agreement, and (2) Estes' breach of his non-solicitation agreement with respect to client Wyld and prospective client Khalifa Kush.   Original Action, D.E. 55 ("Motion for Partial Summary Judgment").

29.    Estes' response in opposition to the Motion for Partial Summary Judgment was due on August 11, 2025.  On August 11, 2025, at 4:27 p.m., Estes, through the law firm of Greenberg Gross, LLP,[2] served a "Notice of Opposition to Metrc MSJ" via email. [3]  **Exhibit N**, *Email Containing Notice of Opposition.*   The following day, on August 12, 2025, Estes served his Opposition to MSJ.

30.    The substance of Estes' defenses to Metrc's Motion for Partial Summary Judgment as to Estes' breach of the Offer Letter Agreement relied *exclusively* on his

---

[2] Greenberg Gross, LLP has not filed an appearance in this action or the Original Action, and it is unclear the extent of the firm's representation of Estes in either lawsuit.

[3] In that Notice, Estes represented that he would timely serve his Opposition to the Motion for Partial Summary Judgment (the "Opposition to MSJ") via email before midnight on August 11, 2025.  Id.  However, Estes failed to serve his Opposition to MSJ on August 11, 2025, as promised. Instead, at 12:14 a.m. on August 12, 2025, Estes, through the law firm Greenberg Gross, LLP, served the Opposition to MSJ.  **Exhibit O**, *Email Containing Opposition to MSJ.*   Thus, Estes never sought an extension of time to serve his Opposition to MSJ, and his Opposition was served untimely.

whistleblower allegations. *See* Opposition to MSJ (Original Action, D.E. 60). These were the same whistleblower allegations that Estes refused to cooperate and produce discovery about during the Original Action because, as he argued before the Oregon Court, his whistleblower and unlawful discharge claims "are completely dissimilar and involve none of the same facts" as the Original Action. D.E. 15 at 3, *Estes' Response to Motion to Dismiss*. Estes' only defense to Metrc's argument that he breached the terms of the Offer Letter Agreement was his purported whistleblower status. *See* Opposition to MSJ at pp. 5-8 (Original Action, D.E. 60).

31.    Thus, it is undisputed that the facts and circumstances at issue in the Instant Action overlap the claims and defenses at issue in the Original Action, as previously found by the Oregon Court.

32.    Because the claims in the Instant Action substantially overlap with the claims raised by Metrc in the Original Action, and Estes previously raised these same claims in the Original Action (albeit unsuccessfully), Metrc respectfully requests that the Instant Action be consolidated with the Original Action for further proceedings.

33.    Metrc further seeks a stay of its deadline to respond to the Instant Action's Complaint until the Court rules on this Motion to Consolidate.

## **ARGUMENT**

### A.    **Standard for Motions to Consolidate Under Rule 42.**

Rule 42 of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing

or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).  Rule 42 allows a district court to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir. 1985) (citations omitted). This Court's decision to consolidate is "purely discretionary." *Id.*

Factors that the Court must consider when deciding to consolidate are as follows:

1. Whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues;

2. The burden on the parties;

3. The witnesses and available judicial resources posed by multiple lawsuits;

4. The length of time required to conclude multiple suits as against a single one;

5. The relevant expense to all concerned of the single-trial, multiple-trial alternatives.

*Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017) (quoting *Hendrix,* 776 F.2d at 1495).  Consolidation is particularly appropriate when the actions are likely to involve substantially the same witnesses and arise from the same series of events or facts.  *Fernandez v. Tampa Bay Rays Baseball, LTD.*, Case No. 8:18-cv-2251-EAK-SPF (M.D. Fla. January 7, 2019) (citing *Blasko v. Washington Metro. Area Transit Auth.,* 243 F.R.D. 13, 15 (D.D.C. 2007) (citation omitted).  District court judges are urged to

15

make good use of Rule 42 consolidation to "eliminate unnecessary repetition and confusion." *Young v. City of Augusta,* 59 F.3d 1160, 1169 (11th Cir. 1995) (quotations omitted).

### B.    Every Rule 42 Factor Weighs in Favor of Consolidation Here.

Turning to the first factor, there is a significant risk of inconsistent adjudications of common factual and legal issues if the Court does not consolidate the actions.  As stated above, the primary defense to Estes' breach of the Offer Letter Agreement in the Original Action involves—at least according to Estes—whether or not he was "unlawfully terminated" due to his purported status as a whistleblower. *See* Case No. 8:24-cv-01252-WFJ-CPT, D.E. 60. This directly intertwines with his underlying whistleblower and unlawful discharge claims in the Instant Action.  While the Oregon Court did not opine, specifically, on the whistleblower allegations when dismissing Estes' claims under the first-to-file rule, it did rule that there was "substantial overlap" with respect to Metrc's claims that he breached the offer letter agreement and whether he was "unlawfully discharged," thus necessitating dismissal (or later, transfer) of the Oregon Action.  *See* D.E. 20, *Order Dismissing Oregon Action.*

For good measure, Metrc provides the following example.  If Estes' defense to the Offer Letter Agreement was valid, and the Court (or trier of fact) could determine that his status as a whistleblower may have affected his obligations under the Offer Letter Agreement, the underlying whistleblower claim would need to be litigated in both the Original Action (as Estes' defense) and the Instant Action (as a claim for

16

which Estes' seeks damages). Inconsistent verdicts are possible. Factor one clearly weighs in favor of consolidation.

Not only is there a risk of inconsistent adjudication, other factors weigh in favor of consolidation. Allowing Estes' rejected Counterclaims to proceed separately places the burden on Metrc to litigate two trials concerning the same factual matter. Metrc would be forced to litigate the whistleblower issue anew after the conclusion of the Original Action, wasting company time and resources, witness time and resources, as well as judicial resources. This would also pose a significant and undue financial burden on Metrc, which has already been laboring under the case management deadlines in the Original Action for more than a year. The same can be said with respect to Estes' unlawful discharge claim, which he has also proffered as a defense to his breach of the Offer Letter Agreement in the Original Action.

In addition, the same witnesses that will be proffered at the trial in the Original Action (including, but not limited to, Mark Goetz, David Eagleson, Michael Johnson, and Sam Peterson) will need to be proffered as defense witnesses in the Instant Action, and much of the same documentary evidence will overlap as well. The parties are identical, and both actions are premised on the same nucleus of operative facts surrounding Estes' discharge from Metrc. *See Kinsey v. MLH Fin. Servs., Inc.,* Case No. 3:10-cv-1055-J-JRK, Case No. 3:11-cv-686-J-JRK, 2011 WL 13141437, at \*\*1-2 (M.D. Fla. Aug. 24, 2011) (granting consolidation where Rule 42 factors were satisfied).

The prejudice to Metrc (and lack thereof for Estes) becomes even more apparent upon review of Estes' tactics during the course of this litigation. Indeed, Estes knew

of his Counterclaims from the outset of the Original Action and provided his first draft of these Counterclaims more than a year ago (in early August 2024). Metrc attempted to take written discovery with respect to these Counterclaims, but Estes and his counsel blocked Metrc's efforts contending the Counterclaims had not yet been filed. Estes chose not to pursue those Counterclaims until the final hour in the Original Action—well after the Court's deadline to amend pleadings had passed.  As set forth in Metrc's Opposition to the Motion to Amend to Add Counterclaims (Original Action, D.E. 52), Courts routinely reject such attempts to assert untimely counterclaims—whether they are permissive or compulsory—when a plaintiff fails to abide by the deadlines set by the Court. *See* Original Action, D.E. 52 at 13-15.  The Court in the Original Action rejected Estes' attempt to amend as he failed to show good cause for the untimely amendment. Then, despite refusing to participate in discovery on the issues in his Counterclaims and arguing to the Oregon Court that his Counterclaims were "unrelated" to his defenses in the Original Action, Estes used his whistleblower allegations as his primary defense in his Opposition to Metrc's Motion for Partial Summary Judgment in the Original Action.  Estes' behavior smacks of gamesmanship. Permitting Estes to pursue his previously rejected Counterclaims as a new and discrete lawsuit would severely prejudice Metrc.

**Simply put, these are not *new* claims that Estes seeks to assert.  These are the same claims that this Court rejected as untimely in the Original Action on July 14, 2025**. Original Action, D.E. 53.  Permitting Estes to pursue his rejected claims in a separate lawsuit eviscerates the Court's July 14 order and operates as an end around

to this Court's orders and procedures. Estes cannot claim prejudice because he had the ability to timely raise these claims in the Original Action, but failed to do so, as supported by his failure to establish good cause for amendment under Rule 16. Original Action, D.E. 53. Conversely, in the absence of consolidation, Metrc will be prejudiced by having to participate in multiple trials—one for which a case management order has yet to even be issued—over claims and defenses that significantly overlap one another. Accordingly, each factor for Rule 42 consolidation is satisfied here.

### C.    Metrc Seeks a Brief Stay or, Alternatively, an Extension of Time to Answer or Otherwise Respond to Estes' Complaint in the Instant Action Pending the Court's Ruling on Consolidation.

Metrc seeks a brief stay of its deadline to answer or otherwise respond to Estes' Complaint in the Instant Action while the Court considers the briefing on Metrc's Motion to Consolidate. Alternatively, Metrc seeks a thirty (30) day extension of time to allow for same.

WHEREFORE, Metrc respectfully requests that the Court: (1) consolidate Case No. 8:25-cv-02067-WFJ-CPT with the Original Action captioned *Metrc, Inc. and Metrc ID, LLC v. Marcus Estes*, Case No. 8:24-cv-01252-WFJ-CPT, (2) enter a stay or thirty-day extension of time for Metrc to answer or otherwise respond to Estes' Complaint in the Instant Action while the Court considers consolidation, and (3) grant such further relief as the Court deems just and proper.

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule, the undersigned hereby certifies that he has attempted to confer with Plaintiff Marcus Estes regarding the subject matter of this motion, including via email on August 20, 2025, but as of the time of filing has received no response from Plaintiff.

Dated this August 20, 2025.

FORDHARRISON LLP

By:    /s/ *Nicholas S. Andrews*
Edward B. Carlstedt
Florida Bar No. 0136972
ecarlstedt@fordharrison.com
Nicholas S. Andrews
Florida Bar No. 0105699
nandrews@fordharrison.com
FordHarrison LLP
401 East Jackson Street, Suite 2500
Tampa, Florida 33602
Telephone (813) 261-7800
Facsimile (813) 261-7899
Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 20, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF, which will send an electronic notification of the filing to all counsel of record, and that a true and correct copy of this motion was sent via email and mail to:

Marcus Estes
1142 Grand Ave.
Astoria, Oregon 97103
Marcus.e@gmail.com

/s/ *Nicholas S. Andrews*
Attorney